Good morning, Your Honors. Counsel, may it please the Court. I'm David Alkire. I represent the appellant, Mr. Hiracheta. As Your Honors are aware, this is a habeas corpus appeal. This is the original habeas corpus petition. In my reply brief, I attempted to make clear that there are two separate approaches we're taking on this appeal. One is based on the decision of the Supreme Court in Crawford v. Washington, which was handed down three days before my reply brief was due. The other basis is the one outlined in the original appellant's opening brief, which is that the lack of inquiry by the state courts at both the trial and appellate level resulted in the failure to accurately apply or even consider the Ohio v. Roberts reliability standards. Is the Crawford case retroactive? Well, what I was saying is a preface. What I did not adequately discuss in my reply brief was the question of retroactivity,  Your Honors are all familiar with the Teague requirements with reference to retroactivity on collateral attack, and what I wanted to address the bulk of my comments right now to was this question of the retroactivity of Crawford. Now, I don't want to take too much time telling you things you already know, but you'll recall that in the Teague decision, the Supreme Court adopted Justice Harlan's analysis and evaluation of what sorts of rules of law should, on collateral review, be given retroactive effect. And what it came down to, insofar as it's relevant to this case, is the question of whether the Supreme Court has announced the new bedrock procedural decision, one that's so significant in its application that fairness requires that it be applied retroactively. And I wanted to approach this by looking at some of the language in Teague, again referring to Justice Harlan. Well, you know, when one goes off on that toot, the Supreme Court has told us since that there are few, if any, maybe none, maybe there are no such rules of law except perhaps the rule about having a right to an attorney. But, in fact, they've stated it more strongly than that, interestingly enough. They've said there aren't any, probably. Well, I've read Your Honor's concurring opinion and love it, and indeed the majority opinion makes that point precisely no more than a month ago. Apparently the Supreme Court, since Teague, has measured at least 11 new rules or proposed rules of criminal procedure against the criteria of the second exception of Teague, which is what we're talking about here, and in every case has refused to apply the rule at issue retroactively. Well, I think it's about time. 0 for 11 seems to me good odds for this one being applied. Right after that language in the Levitt decision, the Court goes on to point out, as Your Honor just mentioned, the guarantee of counsel in criminal trials established by Gideon is an example of the type of rule that would fall within Teague's second exception. Obviously, I don't accept the proposition that after having created the second exception in Teague, the Supreme Court would hold that it's impossible ever to find a case that would meet that exception. But let's look at the right to counsel. Let's imagine a slightly different hypothetical than what we have here. Let's imagine that the juvenile witness, Mr. Flores, the 15-year-old, whose statement was read into the record by a police detective, let's assume he was called as a witness by the prosecution and testified to exactly what he was alleged to have said by the police detective. And at the conclusion of his testimony, the defense attorney stood up and said, now, Mr. Flores, I'd like to ask you a few questions. And the trial judge turned to the defense lawyer and said, you sit down and be quiet. There will be no cross-examination of this witness. I suggest that it would be a pretty easy case, whether on direct or collateral review, for a reversal. But what we have here in Mr. Hiraketa's actual trial is something even worse than that. Namely, the juvenile was not called as a witness, did not testify, but instead the hearsay statement was simply read into the record by a police detective. Obviously, there is no right or no functional right to cross-examine the juvenile under these circumstances. Now, the right to counsel is obviously a bedrock right. And perhaps the most important aspect of the right to counsel in a criminal trial is the ability to cross-examine the prosecution's witnesses. And that's such an important bedrock right that it is articulated expressly in the Bill of Rights, as your honors know. I suggest this is a significant distinction between this case before your honors and those 11 other cases where courts have perhaps inferred or found implied rights to certain aspects of due process. The right to cross-examine, that is, confront and cross-examine witnesses, is considered so foundational that it is expressly set forth. Unlike, let's say, the right to appointed counsel. After all, Gideon against Wainwright, the question there was, does someone have the right to have a lawyer paid for? That is, is it wrong to deny someone the right to counsel because he or she cannot afford it? That issue is not addressed directly in the Bill of Rights, but it was found to be obvious. And now some years, 40 years later, we all think it's patently obvious that an indigent defendant has a right to a court-appointed lawyer at no charge to that person. The point I'm making here is that certain procedures were deemed to be so important that they were expressly set forth in the Bill of Rights, and the right of confrontation is one of those procedures. Consequently, even under the second test in Teague, it should be recognized by the courts that the Crawford decision is indeed a bedrock decision that affects the entire integrity of this trial and any other trial in which a witness is not called, but rather their statement is simply read into the record by a police detective. Let me ask you, even assuming you could get over the high hurdle of Teague here, you're into the world of the Anti-Terrorism Effective Death Penalty Act. Well. And our review is somewhat constricted, an unreasonable application. That's why. Well-established Supreme Court law at the time of the California Court of Appeals decision. Okay. There may well be a conflict between the HEDPA Act and the Teague analysis there. I'm not aware that that is one that has been addressed because these Teague questions always seem to lose. But to answer, Your Honor, more directly, the state of the law in 2000, when the District Court of Appeals rendered its decision, was that an Ohio against Roberts reliability test had to be followed, and further, under Lilly against Virginia, that a trial court could not assume under that test that the fact that a statement was a declaration against penal interest was a sufficient indicia of reliability. Nevertheless, that's exactly what happened here, both at the trial and appellate level. It was assumed that the California evidence code exception for declarations against penal interest entirely answered the question. And I tried to outline the issues of reliability in my brief. None of those were explored or addressed. And when a court fails even to raise and discuss the issues in existing Supreme Court law, I suggest that is not a decision entitled to deference under HEDPA. I've got a minute left, so I'm sorry. Thank you. You can remain here in time for rebuttal. Good morning, Your Honors. May it please the Court. Aaron McGuire on behalf of Respondent and Appellee. The first thing I would like to do is address whether or not Crawford v. Washington is retroactive in this case. First, as Your Honor pointed out, Crawford was not clearly established for purposes of HEDPA when the State court's decision became final. Secondly, because I did not have the opportunity to brief the issue, because of the timing when Crawford came down, appellee would like to assert Teague as a bar affirmatively at this time, and that in this particular case, Crawford does not represent a watershed rule. It is not a change of a bedrock principle, although the confrontation clause is clearly a bedrock principle. It is its application that is controlling here. And Crawford does not change the principle regarding confrontation. It simply, it only provides a new test for the admissibility of certain hearsay statements. So with that, I would submit that Crawford is not a watershed rule. It is barred by Teague, and it is barred again by HEDPA. Appellant, turning to whether or not these statements were properly admitted with respect to Lilly and Ohio v. Roberts, appellant argued in his brief that the statements at issue here were not firmly rooted, did not fall within the firmly rooted hearsay exception, and also that they did not have sufficient particularized guarantees of trustworthiness. That's not the issue before this Court, however. The issue is whether the court of appeals determination that the statements were firmly rooted and that they bore particularized guarantees of trustworthiness was contrary to or an unreasonable application of clearly established Federal law at the time. Frankly, it is still an open question whether the statements at issue in this particular case were firmly rooted or not. Even after Lilly, the question is still not answered where we have a truly self-inculpatory statement which is admitted, which has no reference to an accomplice, whether those statements were firmly rooted or not, even after Lilly. So based on that and based on the court of appeals determination by citing to the State appellate court the Wilson case, it cannot be said that even finding after Lilly that the statements were firmly rooted was contrary to an unreasonable application of clearly established Federal law. Secondly, given the cite to the Williamson case, the United States Supreme Court case, which talked about one of the sufficient particularized guarantees of trustworthiness is a truly self-inculpatory statement. Again, the court of appeal did not err when it cited Williamson saying that this statement was truly inculpatory towards Flores. Consequently, it's reliable under Ohio v. Roberts. In short, Your Honors, the statements at issue here are not similar to the statements at issue in Lilly. Rather, the statements are similar and akin to those which this Court recognized in Hernandez v. Small, which are truly self-inculpatory statements towards Flores that did not directly implicate appellant Hiroshida in this case. Consequently, in light of this Court's decision in Hernandez, appellee requests that this Court affirm the judgment of the district court. And if there aren't any other questions? I don't believe so. Thank you, Your Honors. Thank you. I believe I just heard reference to the confrontation clause as a bedrock principle. If that is so, then it seems to me that goes a long way toward answering the question of the retroactivity of the Crawford decision. Counsel attempted to distinguish the confrontation clause in the theory that the Crawford decision is merely an application of the confrontation clause to a certain kind of hearsay. Well, every guarantee of the Bill of Rights in a trial court is merely an application of some aspect of the Bill of Rights. I agree that Crawford by itself is barred by AEDPA. It was not clearly established law back in the year 2000. However, Teague applies, and the difference between Teague and AEDPA analyses is one that I'm not aware has ever been addressed. I can't say anything in five seconds. Thank you. Thank you. Thank you very much. We appreciate your argument. The matter will stand submitted. The next case on the calendar is Parker v. City of North Las Vegas.
judges: Fernandez, Paez, Weiner